# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM ROSA, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | NO. 12-5102 |
| COMMISSIONER OF SOCIAL SECURITY | : | |
| Defendant | : | |

## MEMORANDUM RE: PLAINTIFF'S MOTION
## FOR SUMMARY JUDGMENT OR REMAND

**Baylson, J.**                                                                                                                                                   **June 28, 2013**

### I. INTRODUCTION

      Plaintiff, William Rosa, seeks judicial review of the Social Security Administration's ("SSA") denial of his application for Supplemental Security Income ("SSI"). Rosa contends that the Administrative Law Judge ("ALJ") denied him a full and fair hearing by failing to order a consultative examination of his physical impairments, and failing to obtain the treatment records from his psychiatrist. For the reasons discussed below, the Court agrees that the ALJ erred in failing to obtain Plaintiff's mental health treatment records and will GRANT Plaintiff's motion to remand on this basis.

### II. FACTUAL BACKGROUND & PROCEDURAL HISTORY

      On December 11, 2009, Plaintiff filed an application for SSI on the basis of a heel injury he suffered in a September 2009 car crash.[1] Plaintiff's heel, which was shattered in the crash, now has an inserted metal plate and several metal screws to hold it together. Although Plaintiff was initially unable to walk, he is now able to walk with the assistance of a cane. Plaintiff

---

[1] Plaintiff's application also referenced high blood pressure, but a subsequent medical examination found his blood pressure to be within normal limits. Since Plaintiff no longer alleges a disability on this basis, the Court will not address the issue here.

claims that his heel continues to give him constant pain, and makes it difficult to walk, stand, and balance.

On April 13, 2010, Dr. Kurt Maas completed a residual functional capacity assessment of Plaintiff's physical abilities on behalf of the SSA. After reviewing Plaintiff's medical records, Maas concluded that the heel fracture was responding well to treatment (i.e., physical therapy and medication), and that Plaintiff would have the ability to resume work at the medium exertional level by September 2010. On the same day that Maas completed his assessment, the SSA denied Plaintiff's claim for SSI benefits on the grounds that his injury was "not expected to remain severe enough for 12 months in a row to keep [Plaintiff] from working." Administrative Record ("A.R.") at 59.

Following the SSA's denial of his claim, Plaintiff requested a hearing and underwent several medical examinations by Dr. Thomas P. Zavitsanos and Dr. Galina Zeltser. These examinations, which occurred between April 26, 2010 and July 7, 2010, revealed "persistent right foot pain post heel surgery" and "possible" degenerative changes (i.e., "possible radiculopathy per EMG in conjunction with a right peroneal neuropathy"). Id. at 266. Based on indications of degenerative changes, an MRI was conducted of Plaintiff's spine. The MRI showed "minimal disc bulging from L2-L3 through L4-L5," but otherwise "normal height and marrow signal" of the vertebral bodies, and "no significant narrowing of the central canal or neural foramina." Id. at 261. Shortly thereafter, Plaintiff received a steroid injection in his lumbar spine. The record does not contain additional reports of spine-related ailments subsequent to this injection.

Plaintiff's hearing before the ALJ (Gerald Spitz) occurred on November 17, 2010. At the hearing, ALJ Spitz asked Plaintiff: "Is it fair to say, and please correct me if it's not fair to say,

that the—what brings you here today, the problem you have, let's say, one year after the accident, is all from the heel and pain from the heel, or do you have some other problems in addition to difficulties arising from . . . that damage to your heel?" Id. at 40. The Plaintiff, who represented himself pro se, responded: "Yes. I really can't walk the way I used to walk," adding that he was "constantly in pain" because of the heel. Id.

The ALJ followed up by asking Plaintiff to describe his daily routine. In his response, Plaintiff mentioned "going on doctor visits," including to his "psych doctor." Id. at 41. Plaintiff's reference to having a "psych doctor" prompted the ALJ to ask "where do you go for your mental health? . . . I don't have that, I don't believe, and I'm [sic] want to go get it." Id. Plaintiff handed the ALJ a one-page document from the Hispanic Community Counseling Services ("HCCS"). The document, dated November 16, 2010, identified Plaintiff as suffering from adjustment disorder (i.e., "309 Adj. Disorder NOS") and stated that he was receiving "psychotherapy" from one of HCCS's therapists (Miguel Cotes) and medications from an HCCS psychiatrist (Dr. Geraldine Mayor). Id. at 270. Plaintiff's admission date was listed as August 16, 2010, and an antidepressant (Citalopram) was listed as one of the medications he was being prescribed.[2]

After receiving the HCCS document, the ALJ told Plaintiff several times that he would attempt to obtain Plaintiff's mental health treatment records from HCCS. See id. at 41-42, 45, 51, 55. The ALJ reiterated this assurance at the close of the hearing, stating: "So, what I'll do is close the record for today and, upon receipt of the records from Hispanic counseling, I'll review the totality of the records that I have, the testimony, the documents. I'll apply all of it to the statutory law and regulations . . . ." Id. at 55.

---

[2] The HCCS document appears to list two medications, but only the Citlopram prescription is legible. A.R. at 270. At the hearing, Plaintiff provided the ALJ prescription notes for two antidepressants (Citloplam and Mirtazapine). Id. at 44.

3

During the hearing, the ALJ asked Plaintiff a question to clarify the nature of his mental health problem. The ALJ asked, "how do you feel the mental aspects would impact – how do they impact you now? How do you think they would impact on a job?" Id. at 48. Plaintiff responded: "Well, I'm mostly depressed. I mean, I'm—I'm not used to being—how do you say it—dependent on people. Now, I feel like, I don't know, I guess, less than a man, because . . . I never needed any help from anybody." Id. Plaintiff, who had previously mentioned having a problem with "anxiety," id. at 39-40, stated that his inability to work or exercise made it difficult for him to get his "mind off of things," id. at 48.

On March 1, 2011, the ALJ issued an opinion denying Plaintiff's disability claim. Although finding Plaintiff's heel injury to be a severe impairment that continued to cause residual pain, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to perform light exertional work. The ALJ based this conclusion on both Dr. Maas's RFC assessment in March 2010 and the absence of any reports of spine-related injuries following Plaintiff's steroid injection in June 2010.

With respect to Plaintiff's mental health status, the ALJ stated that he sent HCCS "three requests for treatment records," but "received no response whatsoever." Id. at 14, 16. The ALJ thus limited his consideration of Plaintiff's mental health problems to the evidence already in the record, which the ALJ described as "sporadic and inconsistent references to panic attacks and anxiety" which have "not been well documented or alleged as a disabling condition." Id. at 14. In finding Plaintiff's mental issues to be non-severe, the ALJ gave "significant weight" to a March 2010 review of Plaintiff's pre-HCCS records by state consultant, Dr. James Cunningham. While Dr. Cunningham found evidence of an adjustment disorder, he found no indication of a "severe psych disorder." Id. at 242.

After the ALJ issued his opinion, Plaintiff hired an attorney to file an appeal to the SSA's Appeals Council. Plaintiff's attorney provided the Appeals Council allegedly new and material evidence, including two "ability to do work-related activities" assessments from Dr. Mayor (dated June 2, 2011 and March 15, 2012), and an RFC assessment from Plaintiff's treating podiatrist, Dr. Justin Fleming (dated March 17, 2011).[3] According to Dr. Mayor, Plaintiff has extreme limitations in his capacity to (1) understand, remember, and carry out detailed instructions; (2) interact appropriately with the public, supervisors, and co-workers; and (3) respond to changes and pressure in a work setting. According to Dr. Flemming, Plaintiff can only walk/stand for one hour in an eight hour workday, and has a number of serious postural limitations. Although Mayor's and Flemming's assessments were prepared after the ALJ released his opinion, Plaintiff's attorney argued that "[b]oth physicians had been treating the claimant for several years by the time they completed the medical statements," and thus "their opinions pertain to the claimant's disability prior to the ALJ's decision."[4] Id. at 148.

On July 11, 2012, the Appeals Council denied Plaintiff's appeal. Plaintiff thereupon filed a request for review with this Court. (ECF No. 3). Plaintiff has moved for reversal or remand based on the ALJ's failure to order a consultative examination of his physical injuries and subpoena the mental health treatment records from HCCS. (ECF No. 8).

On May 30, 2013, the Court issued an Order requesting further briefing from the parties on three issues: (1) whether the failure by Plaintiff's attorney to obtain the HCCS treatment records during the Appeals Council proceeding waived Plaintiff's claim with respect to the

---

[3] Plaintiff's attorney did not obtain HCCS's treatment records from 2010. In a supplemental brief to this Court, Plaintiff explained that the HCCS records were not submitted to the Appeals Council because HCCS has a strict policy against releasing treatment records in the absence of a subpoena.
[4] In his briefs to this Court, Plaintiff concedes that the assessments by Drs. Mayor and Fleming are not new and material evidence, and thus the Court will not consider them as such.

5

ALJ's previous failure to obtain these same records;[5] (2) whether this Court can credit the ALJ's statements that he requested the HCCS records in the absence of documentation that the requests were made;[6] and (3) whether an ALJ's failure to issue a subpoena can ever constitute an abuse of discretion where the claimant did not request that a subpoena be issued. (ECF No. 12). The parties filed their responses on June 13, 2013, (ECF Nos. 13 &14), and the matter is now ripe for decision.

### III. LEGAL STANDARD[7]

A district court must uphold an ALJ's disability determination so long as it is supported by "substantial evidence." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Id. A district court may not "weigh the evidence or substitute [its own] conclusions for those of the fact-finder." Id. "Evidence is not substantial," however, if the ALJ "failed to consider all relevant evidence . . . ." Sanchez v. Comm'r of Soc. Sec., 271 F. App'x. 230, 232 (3d Cir. 2008) (citing Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000)); see also Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (stating that ALJ must consider all "relevant, probative and available evidence").

While a claimant bears the burden of proving his disability, 20 C.F.R. § 404.1512(a), the Third Circuit "has repeatedly emphasized that the special nature of proceedings for disability benefits dictates extra care on the part of the agency in developing an administrative record and in explicitly weighing all evidence," Dobrowolsky, 606 F.2d at 406-07. "ALJs have a duty to develop a full and fair record in social security cases," Ventura v. Shalala, 55 F.3d 900, 902 (3d

---

[5] In its response, Defendant conceded that this circumstance did not constitute a waiver.
[6] See infra note 9 for a discussion of the parties' respective arguments on this issue. Under the circumstances of this case, the ALJ's duty to develop a full and fair record required more than just requesting the HCCS records. Accordingly, whether or not the ALJ made the requests was ultimately immaterial to the outcome of this case.
[7] This Court has subject matter jurisdiction of this action pursuant to 42 U.S.C. §§ 405 and 1383(c)(3).

Cir. 1995), and this duty is heightened when the claimant appears at the hearing without the benefit of counsel. When a claimant is unrepresented, "the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003) (internal quotation marks omitted); see also Comiskey v. Astrue, No. 09-0252, 2010 WL 308979, at *5 (E.D. Pa. Jan. 27, 2010) ("The Third Circuit repeatedly has recognized that an ALJ must 'assume a more active role when the claimant is unrepresented.'"). When an ALJ "has failed to exercise his authority to attempt to fill significant evidentiary gaps that are material to the disability determination," remand is appropriate. Comiskey, 2010 WL 308979, at *7 (quoting Jozefick v. Shalala, 854 F. Supp. 342, 349 (M.D. Pa. 1994)).

## IV. ANALYSIS

### A. The ALJ Was Not Required to Order a Consultative Exam

The Court will begin its analysis by addressing Plaintiff's argument that the ALJ erred in not ordering a consultative examination of his physical injuries. Under SSA regulations, an ALJ "may decide to purchase a consultative examination" where "there is an indication of a change in [claimant's] condition that is likely to affect [claimant's] ability to work."[8] 20 C.F.R. § 404.1519a. Plaintiff argues that the findings by Drs. Zavitsanos and Zeltzer with regard to degenerative nerve damage and persistent heel pain "qualify as a change in condition likely to affect Plaintiff's ability to work." Pl's Br. at 9. Plaintiff contends that these findings imposed a duty on the ALJ to order a consultative examination. This argument falls short, however,

---

[8] In a previous case involving a *represented* claimant, this Court held that use of the word "may" in the regulations "leaves the decision of ordering a consultative examination at government expense entirely within the ALJ's discretion." Reid v. Astrue, No. 06-2694, 2008 WL 2165100, at *4 (E.D. Pa. May 23, 2008). Whether or not Reid's holding applies equally to *pro se* claimants is a question that is not addressed here because the ALJ was justified in concluding that the evidence did not indicate a likely change in Plaintiff's physical ability to work.

7

because the ALJ provided a clear basis why he did not believe Zavitsanos's and Zeltzer's findings suggested a likely material change to Plaintiff's physical ability to work.

First, Zavitranos's and Meltzer's initial concern about "possible" degenerative changes was not confirmed by the MRI that Zavitranos subsequently ordered. As the ALJ noted, the MRI found "only minimal disc bulging" and no infringement on the spinal cord. A.R. at 15. Second, according to Zavitranos, the only treatment indicated by these findings was a lumbar steroid injection, and subsequent to this single injection, "there are no further records regarding any back injuries." Id. When the ALJ asked Plaintiff at the hearing whether he was receiving any treatment for his back, Plaintiff said "no." Id. at 46. Although Plaintiff testified to having back pain when he sits down for extended periods of time, Plaintiff did not reference his back when asked if he was alleging disability based on "other problems" besides his heel injury. Id. at 40, 45-46. Finally, while the ALJ gave little credit to Plaintiff's alleged back-related injuries, the ALJ did credit the persistence of Plaintiff's heel pain. Whereas Dr. Maas had previously concluded that Plaintiff could resume work at the medium exertional level by September 2010, the ALJ concluded that Plaintiff's persistent heel pain limited him to only mild work.

The Court is satisfied that the ALJ adequately accounted for Drs. Zavitsanos's and Zeltzer's findings and had a reasonable basis for concluding that Plaintiff did not experience a change in his physical condition that was likely to affect his ability to work.

**B.      The ALJ Failed to Develop a "Full and Fair Record"**

Plaintiff argues that the ALJ erred by failing to develop the record with respect to his mental impairment. For the reasons that follow, the Court agrees that the ALJ erred, and finds that the error was sufficiently prejudicial to warrant remand.

1. **The ALJ Committed Legal Error**

Since Plaintiff was a pro se claimant, there can be no dispute that the ALJ had a duty to request Plaintiff's psychiatric treatment records from HCCS. See Reefer, 326 F.3d at 380; Comiskey, 2010 WL 308979, at *5. In his opinion, the ALJ states that he made three requests for the records; the Administrative Record, however, contains no evidence of these requests.[9] If the requests were not made, the error would be obvious. But, even if the requests were made, requests alone were not sufficient under the circumstances of this case to satisfy the ALJ's heightened duty to develop a full and fair record.

The Third Circuit has stated that the adequacy of an ALJ's investigation is determined on a "case-by-case" basis. Reefer, 326 F.3d at 380. In this case, there were several factors—in addition to Plaintiff's pro se status—that heightened the ALJ's duty to obtain Plaintiff's treatment records. These factors included: the ALJ's awareness of the records' existence;[10] the ALJ's statements that he would hold off on writing an opinion until obtaining the records;[11] the fact that the records suggested a mental impairment;[12] and the fact that the records were from

---

[9] Defendant argues that the "presumption of regularity" for public officer actions requires that this Court presume the requests were made. This presumption, however, only applies "in the absence of contrary evidence." Kephart v. Richardson, 505 F.2d 1085, 1090 (3d Cir. 1974). Contrary evidence includes evidence "showing the government did not comply with proper procedures when taking the action at issue." United States v. Fry, No. 05-5300, 2007 WL 1696015, at *5-6 (E.D. Pa. Apr. 2, 2007). In social security cases, it is routine procedure for the Administrative Record to include records (e.g., Notice of Hearing) demonstrating the SSA's fulfillment of duties owed to the claimant. Some courts have taken the position that this procedure applies to an ALJ's duty to develop the evidentiary record. See Smith v. Astrue, No. 05-1433, 2008 WL 4517810, at *7 (N.D.N.Y. Sept. 30, 2008) ("The ALJ must also enter these attempts at evidentiary development into the record."); Suriel, 2006 WL 2516429, at *4 (same); Jones v. Apfel, 66 F. Supp. 2d 518, 524 (S.D.N.Y. 1999) (same). The Court need not resolve this issue here.

[10] See Wooten v. Astrue, No. 11-7592, 2012 WL 6601397, at *4 (E.D. Pa. Dec. 17, 2012) ("When there is a perceived gap in the historical record, the ALJ has an obligation to obtain the missing information.").

[11] Courts have found unfairness where, as here, the ALJ indicates that he will obtain evidence on behalf of a pro se claimant but does not subsequently do so. See Hess v. Sec. of Health, Educ. & Welfare, 497 F.2d 837, 841 (3d Cir. 1974); Jozefick, 854 F. Supp. at 349.

[12] See Plummer v. Apfel, 186 F.3d 422, 434 (3d Cir. 1999) ("The ALJ has a duty to develop the record when there is a suggestion of mental impairment . . . ."); Wooten v. Astrue, No. 11-7592, 2012 WL 6601397, at *3 (E.D. Pa. Dec. 17, 2012) ("The ALJ's duty to develop the record is heightened where a claimant acts pro se. . . . It is even more compelling when the pro se claimant has a mental impairment.").

9

Plaintiff's treating psychotherapist and psychiatrist.[13] The presence of these independently significant factors imposed a heightened duty on the ALJ.

While the ALJ had no control over whether HCCS responded to his requests, he had other options at his disposal to address the situation. First and foremost, he could have issued a subpoena. 20 C.F.R. § 416.1450(d)(1) (stating that an ALJ has authority "on his or her own initiative" to issue and enforce subpoenas for the production of records "[w]hen it is reasonably necessary for the full presentation of a case"). While the controlling regulations speak in terms of when ALJs "may" exercise this authority, some district courts have stated that the authority to issue/enforce subpoenas can become mandatory where, as here, the claimant is pro se. E.g., Jozefick, 854 F. Supp. at 348; Suriel, 2006 WL 2516429, at *4; Jones, 66 F. Supp. 2d at 524. As Plaintiff notes, "[i]f the [the ALJ] is not required to subpoena records for an unrepresented claimant from a medical provider who won't provide full treatment records without a subpoena, then her obligation to develop the record is rendered pointless." Pl's Suppl. Br. at 6.

To the extent that the ALJ had a reasonable basis for not issuing a subpoena, his heightened duty obligated him, at a minimum, to notify Plaintiff of his intent to forego considering the HCCS records *prior to issuing the opinion*. The ALJ owed this to Plaintiff, in part, because of the ALJ's statement at the hearing that he would attempt to obtain the records and would hold off on issuing his final opinion until receiving them. See A.R. at 55 ("[U]pon receipt of the records from Hispanic counseling, I'll review the totality of the records that I have, the testimony, the documents. I'll apply all of it to the statutory law and regulations . . . ."). Having given Plaintiff the reasonable expectation that the final decision would not be issued until the HCCS records were obtained, the ALJ's failure to notify Plaintiff of his intent to issue the

---

[13] See Suriel v. Comm'r of Soc. Sec., No. 05-1218, 2006 WL 2516429, at *4 (E.D.N.Y. Aug. 29, 2006) ("[An ALJ's] affirmative duty is heightened in cases involving pro se plaintiffs, and is further enhanced when the record sought is that of a treating physician.").

10

opinion in the absence of these records was manifestly unfair. See Jozefick, 854 F. Supp. at 349 ("[The claimant] was clearly justified in believing that efforts would be undertaken to secure evidence from Dr. Dreibelbis, either in writing or by way of testimony, before a decision was made. It is manifestly unfair to have issued a decision without such efforts being pursued."); see also Hess, 497 F.2d at 841 ("[W]e note that although no definite commitment was made [by the ALJ], the claimant may well have inferred that the latest records of the Geisinger Medical Center would be obtained before a decision would be handed down.").

In light of the ALJ's heightened duty in this case to obtain the treatment records, his failure to either subpoena the records or provide notice to Plaintiff of his intent to issue the opinion without considering them, violated Plaintiff's right to a full and fair hearing.

2.  **The ALJ's Error Prejudiced Plaintiff's Substantial Rights**

In Shinseki v. Sanders, 556 U.S. 396, 407 (2009), the Supreme Court made clear that the "harmless error" rule that reviewing courts apply in "ordinary civil cases," is equally applicable to "administrative cases."[14] Under the harmless error rule, an error only warrants remand if it prejudiced a party's "substantial rights." 28 U.S.C. § 2111. An error implicates substantial rights if it likely affects the outcome of the proceeding, or likely affects the "perceived fairness, integrity, or public reputation of judicial proceedings." Sanders, 556 U.S. at 411-412.

Since the burden of proving prejudice in civil and administrative cases is on the party alleging error, id. at 409, a quandary is created where the error, as here, led to a deficiency in the evidentiary record. If the evidence that may have been obtained is not yet known, it is naturally difficult to assess the error's impact on the outcome of the proceeding. This, however, is *not* a

---

[14] Although Sanders addressed administrative proceedings within the Department of Veterans Affairs, courts have interpreted its holding and reasoning as being equally applicable to social security proceedings. E.g., McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011); Watts v. Astrue, No. 12-4116, 2013 WL 2392909, at *3 (E.D. Pa. June 3, 2013) (Baylson, J.).

11

barrier to a demonstration of harmfulness. See McLeod, 640 F.3d 881, 887-88 ("Sanders does not mean that the claimant necessarily has to show what other evidence could have been obtained."); Comiskey, 2010 WL 308979, at *7 ("[T]he Third Circuit has not required the claimant to produce the very records to be considered in order to show prejudice . . . .").

The Sanders opinion provides useful guidance for determining when an administrative court's failure to develop the record enables an inference of prejudice. In Sanders, the Court addressed two veteran affairs proceedings where defective notices impeded the claimants' ability to produce evidence of their alleged service-related disability. In one case, the error was held harmless because the claimant did not specify any "specific additional evidence" he would have obtained, or how this evidence "could have made any difference," despite the fact that the claimant had been alleging a service-related disability for over 60 years and had had "numerous medical examinations." Id. at 413. In the other case, the Court held that remand was warranted because there were reasonable "uncertainties" about the error's impact on the judgment. Id. at 414. Although the Court acknowledged that "[s]ome features of the record suggest[ed] the error was harmless," remand was appropriate because other evidence in the record suggested that the missing evidence (i.e., an additional medical examination) "might have" have changed the outcome. Id. A failure to develop the record can thus be found harmful in the absence of clear evidence of prejudice.

In this Circuit, district courts have found prejudice where the ALJ's failure to develop the record resulted in "significant evidentiary gaps that are material to the disability determination." Comiskey, 2010 WL 308979, at *7 (quoting Jozefick, 854 F. Supp. at 349)). Under Sanders, however, reviewing courts cannot presume prejudice based on per se rules. 556 U.S. at 408. A finding of prejudice must rest, instead, "on the facts and circumstances of the particular case."

12

Id. at 411. A reviewing court can, however, take account of the "natural effects" of the error at issue. Id. "Natural effects" are "empirically based generalizations about what kinds of errors are likely, as a factual matter, to prove harmful." Id. In the wake of Sanders, therefore, the existing rule in this Circuit that a claimant is prejudiced when there are "significant evidentiary gaps that are material to the disability determination" is perhaps best viewed as a "natural effect," rather than a presumption.

As in Sanders, there are factors in this case that suggest the ALJ's error was harmless. One of these factors is Dr. Cunningham's conclusion that Plaintiff's pre-HCCS medical records "do[] not indicate the presence of a severe psych disorder." A.R. at 242. Another factor is Plaintiff's failure to allege, either in his SSI application or at the hearing, that his mental impairments were a disabling condition. In his SSI application, Plaintiff focused solely on his heel injury and stated that he had no impairments that would limit his memory, ability to pay attention, follow instructions, or get along with others. Id. at 128-129. At the hearing, Plaintiff responded in the affirmative when the ALJ asked if "it was fair to say" that the heel injury was the sole basis for his disability claim. Id. at 40. Further, when asked to describe his mental impairment, Plaintiff stated that he was "mostly depressed" because he was "not used to being . . . dependent on people," id. at 48—a response that is arguably suggestive of a minor impairment secondary to the heel injury.

While the aforementioned factors suggest the ALJ's error was harmless, there are "other features" in this case that "suggest the opposite." See Sanders, 556 U.S. at 414. First, while the ALJ may have been right that the current record is insufficient to demonstrate a "severe" impairment, a mental impairment need not be severe to have a material effect on a disability determination. This is because mental impairments such as anxiety and depression are

13

considered "nonexertional limitations," 20 C.F.R. § 404.1569a, which must be considered in the ALJ's determination of a claimant's RFC, even when they do not constitute a "severe" impairment under step 2 of the disability analysis. See Sykes v. Apfel, 228 F.3d 259, 261 (3d Cir. 2000). While nonexertional limitations must be "significant" to warrant consideration in the RFC determination, id. at 268, the record is sufficient to justify this inference. First, Plaintiff's pre-HCCS medical records contain several references to mental health problems, including "panic attack" and "anxiety," for which Plaintiff was prescribed Xanax. A.R. at 206, 212, 217, 221. Second, in the HCCS document that Plaintiff provided to the ALJ, Plaintiff is identified as suffering from adjustment disorder and receiving ongoing therapy, including anti-depressant medication.

Finally, the RFC assessments from HCCS's Dr. Mayor, while post-dating the ALJ's ruling, provide added plausibility to Plaintiff's claim that the HCCS records could have had a material effect on the outcome. Dr. Mayor assesses that Plaintiff's adjustment disorder has caused a number of "marked" and "extreme" effects on his capacity to understand, remember, and carry out detailed instructions and respond appropriately to work-related pressures. Id. at 272-76. If the HCCS treatment records prior to March 2011 are consistent with Dr. Mayor's recent assessments, the records would be material to the RFC determination, particularly given the "great weight" that courts give to the records of a claimant's treating physician. Plummer, 186 F.3d at 429. ALJ's failure to obtain the treatment records thus produced a "significant evidentiary gap" that was "material" to the disability determination. Courts in this Circuit have recognized that prejudice is a "natural effect" of an error of this kind. See Comiskey, 2010 WL 308979, at *7; Isaac v. Astrue, No. 08-1661, 2009 WL 1492277, at *14 (W.D. Pa. May 28,

14

2009); Gauthney v. Shalala, 890 F.Supp. 401, 410 (E.D. Pa. Feb. 24, 1995); Jozefick, 854 F. Supp. at 348.

Under the circumstances of this case, therefore, the Court finds a sufficient basis to infer that the ALJ's failure to develop a full and fair record prejudiced Plaintiff's substantial rights.

## V.  CONCLUSION

Based on the foregoing considerations, the Court will GRANT Plaintiff's Motion to Remand. On remand, the ALJ should obtain the treatment records from HCCS as of March 1, 2011, or solicit the testimony of Dr. Mayor as to the status of Plaintiff's mental health during this relevant time period. The ALJ should thereupon reassess its previous RFC determination in light of this additional evidence.

An appropriate order follows.

O:\CIVIL 12\12-5102 rosa v. astrue\memorandum.docx